## MID-SOUTH PAVING Co. *et al. v.* STATE HIGHWAY COMMISSION *et al.*

(In Banc. Feb. 12, 1945. Suggestion of Error Overruled June 11, 1945.)

[20 So. (2d) 834. No. 35818.]

Greek L. Rice, Attorney General, by James T. Kendall, Assistant Attorney General, for appellee, on motion to dismiss appeal.

William Harold Cox, of Jackson, for appellants, on motion to dismiss appeal.

William Harold Cox, of Jackson, for appellants, on the merits.

Greek L. Rice, Attorney General, by James T. Kendall, Assistant Attorney General, Green & Green and E. R. Holmes, Jr., of Jackson, for appellee, on the merits.

Greek L. Rice, Attorney General, by James T. Kendall, Assistant Attorney General, and Green & Green and E. R. Holmes, Jr., of Jackson; for appellee, on suggestion of error.

**William Harold Cox,** of Jackson, for appellant, on suggestion of error.

**Lotterhos, Travis & Dunn,** of Jackson, for amicus curiae, on suggestion of error.

**Griffith, J.,** delivered the opinion of the court on motion to dismiss appeal.

On September 23, 1944, appellants filed their bill in attachment in chancery against the Trinidad Asphalt Mfg. Co., of Missouri as the principal defendant and against the Mississippi State Highway Commission as a defendant alleged to be indebted to its codefendant. Sections 2729 et seq., Code 1942. On September 30, 1944, the Highway Commission moved to quash the process so far as it was concerned and for its discharge and dismissal on the ground that the proceeding was in effect an attachment against the Commission, and that the statutes have not permitted such a proceeding against it, the Commission being an agency of the state.

On the return day the nonresident defendant presented its petition and bond for removal to the federal court. Thereafter on November 27, 1944, the chancery court entered an order sustaining the motion of the Highway Commission and dismissing it as a party, and two days later, the Court made another order sustaining the petition of the nonresident defendant for removal of the cause to the federal court. Within due time the complainant perfected its appeal to this Court from the order dismissing the Highway Commission as a party.

The principal argument by the Commission is that the order of dismissal is not appealable. The statute, Section 1147, Code 1942, expressly allows an appeal from any final decree, with certain exceptions not here involved. When a decree dismisses the bill as to one party and it is not contemplated that any further proceedings are

to be taken against him, it is final as to that party, although other parties remain against whom further proceedings are to be taken. Carter v. Kimbrough, 122 Miss. 543, 84 So. 251. But while this is true, there must be a final decree as to all the parties before an appeal will lie; and the statute of limitations does not begin to run until final judgment as to all parties. Dickerson v. Western Union Telegraph Co., 111 Miss. 264, 71 So. 385. The reason for the rule is disclosed in Mulholland v. Peoples Bank, 187 Miss. 608, 612, 192 So. 308, namely, that ordinarily the rights and liabilities of the several parties are so connected or interwoven that appeals by piecemeal should not be allowed.

But the rule as last above stated is not inflexible, as may be seen from the text and annotations 4 C. J. S. Appeal and Error, sec. 104, pp. 199 et seq., and as in other cases, it ought to go no further than the reasons upon which it rests. The reasons are that, before an appeal, the trial court should be allowed to go forward and develop the entire case, in the light of which it may be better determined whether in fact there was an error, or, if so, whether harmful, in the order of dismissal as to one or more of the parties. The rule presupposes that the case as to the remaining parties will remain in the trial court and will there be disposed of as to all the parties.

Here, however, the order of dismissal as to the resident defendant produced the result that the other defendant promptly thereafter was able without impediment to procure and did procure an order of removal to the federal court, so that the trial court which made the order of dismissal cannot proceed to develop the entire case, and make a final decree as to all parties, from which an appeal to this Court would lie, including an appeal from the order of dismissal.

The appellate court may say, as it has done, when an appeal such as here presented may be taken, but the court has no authority, in the face of the statute, to say that

no appeal shall be taken at all. So long as the case stands as removed to the federal court, whereby the chancery court can do nothing further upon the merits as to any of the parties, than to preserve the statutory right of appeal, the case must for that purpose be regarded as disposed of as to all parties so far as the chancery court is concerned and that in consequence its order of dismissal here involved must be held to be now appealable, else it might turn out that it could never be appealed.

The further argument is made by the Highway Commission that, by the order of removal, the state court, including this Court, no longer has any jurisdiction to deal with the case, regardless of what state statutes may be. For the purposes of discussion we may concede this as a general proposition, but the argument as presented overlooks the fact that the removal did not take along with it the Highway Commission, which, before the order of removal, had been dismissed from the record. The state court in making this order of dismissal was passing upon the meaning and effect of state statutes, wherein the federal courts must follow the holding of the state court, so that the rule that the transfer of a suit from the state court to the federal court does not vacate what was done in the state court prior to removal would have to apply. See 45 Am. Jur., pp. 954, 955.

Finally the Commission says that if this appeal were entertained and the decree of dismissal were reversed the mandate when sent down would find no case pending in the lower court upon which it could operate. It does not follow that such a mandate would find no use when the complainant presented it duly certified to the federal court.

Motion to dismiss overruled.

## ON THE MERITS.

**Roberds, J.**, delivered the opinion of the court on the merits.

This is a non-resident attachment in chancery under Sec. 2729, Code 1942. Appellant, a co-partnership consisting of two resident citizens and three nonresidents of Mississippi, filed a bill against Trinidad Asphalt Manufacturing Company, a nonresident corporation, domiciled at St. Louis, Missouri, and the Mississippi Highway Commission, (which we will hereafter call department) seeking to establish an indebtedness in its favor against Trinidad, and for a personal decree therefor, and to have applied to such indebtedness money of Trinidad which Department has in its possession, or which it owes Trinidad. Citation for Trinidad was served upon its designated resident agent, but it did not appear. The Department made a motion to quash the proceeding as to it on the ground that it is an agency of the state, disbursing public money, and is not liable to attachment herein. The motion was sustained, and the correctness of that ruling is the only question for decision on this appeal. Appellant contends that while the Department is technically a government agency, its functions are not governmental within the rule heretofore announced by the Court rendering it immune, as a party to this proceeding, but, if so, the rule ought not to apply under the peculiar facts of this case.

The bill and agreed stipulation disclose that Trinidad was the prime contractor with the Highway Department for the construction of 11.353 miles of hard-surfaced public highway on route No. 45 in Lowndes County, Mississippi, according to plans and specifications of such Department, and under the supervision of, and subject to final inspection and acceptance by, said Highway Department; that Trinidad entered into a sub-contract with Mid-South, under which Mid-South would furnish and properly lay the asphalt and concrete on said road as required by the prime contract, Trinidad to construct and prepare the road-bed therefor, which contract set out the compensation Mid-South should receive, as well as the respective duties and obligations of the parties there-

under. Both the prime and sub-contractor performed and completed their respective parts of the work under the supervision of the Highway Department, and the completed job had been finally inspected, approved and accepted by the Department; that Trinidad had failed to pay Mid-South, and was indebted to it in the approximate sum of $80,000; that Trinidad was qualified to do business in Mississippi, and that "The State Highway Commission has in its hands a substantial sum of money due the prime contractor, Trinidad, for this work . . . ;" and that Trinidad has no assets whatever in this state other than such money.

The Department cites, in support of its contention, McBain v. Rodgers (Miss.), 29 So. 91; Dollman v. Moore, 70 Miss. 267, 12 So. 23, 19 L. R. A. 222; Dollar v. Allen-West Commission Co., 78 Miss. 274, 277, 28 So. 976; Clarksdale Compress Co. v. W. R. Caldwell Co., 80 Miss. 343, 31 So. 790; Howell v. Kersh, 152 Miss. 266, 119 So. 186; and Smith v. Doehler Metal Furniture Co., 195 Miss. 538, 15 So. (2d) 421.

The McBain case was a garnishment at law. There are vital distinctions between the duties and liabilities of a garnishee at law and a defendant-garnishee in chancery. In a law garnishment a garnishee, in addition to being required to answer whether it owes, or has in its possession effects of, the nonresident defendant, must also answer whether it knows or believes that any other person is indebted to, or has in his possession effects of, such nonresident, and, if so, whom, in what amount, and where he resides. Sec. 2788, Code 1942. And if he fail to answer, the court shall enter judgment against him for the amount of plaintiff's demand and all costs. Sec. 2798, Code 1942. Such law-garnishee, to protect himself, is also under certain duties to raise the question of exemption of the debtor-defendant (Sec. 2799, Code 1942; City of Laurel v. Turner, 80 Miss. 530, 31 So. 965), as well as the validity of the judgment on which the garnishment is based. Sec. 2803, Code 1942.

And the tendency of the legislature has been to enlarge the right of garnishment against public bodies, even in law cases, as is shown by the enactment of Ch. 321, L. 1936, Sec. 2783, Code 1942, permitting garnishments in such cases against the state, counties and municipalities, and political subdivisions thereof, where plaintiff has obtained a judgment upon which execution may issue, although no default judgment can be taken if such garnishee fails to answer. Sec. 2790, Code 1942. But in attachments in chancery the garnishee is simply made a defendant in the original cause against the nonresident debtor, and the only duty of the garnishee is to answer whether he is indebted to, or has in his possession effects of, such nonresident debtor; and if so, in either case, to deliver the same to the court in that cause, if the court so finally orders, for disposition by the court as it may adjudicate to be lawful and equitable.

In the Dollman v. Moore case the garnishee was the board of school trustees of Yazoo City. The trustees did not raise the question of whether they could be garnished, and the court held that the nonresident debtor could not do so, and that the question was not jurisdictional, and affirmed the case. Therefore, that case is not authority for the position of the Highway Department. However, Judge Cooper did say in the opinion that a municipality was not a "person" within the meaning of that word as used in the then attachment statute. Code 1880, Sec. 1832. But he did not mention the definition of that word as it appears in Sec. 1512, Code 1892 (Sec. 689, Code 1942), which section added to Sec. 1832, Code 1880, these words, ". . . shall apply to artificial as well as natural persons . . . " In fact, Ch. 31, Definitions, which includes Sec. 1512, went into effect November 1, 1892, and the Dollman case was decided in October previously. It might be noted, too, that the board of school trustees was not a corporation or legal entity subject to suit, had the right to garnish it been raised by that board. But the court, after sustaining the attachment as to the

municipaliy, did make this observation, which is pertinent to the case under consideration [70 Miss. 267, 12 So. 25].: "We are not to be understood to say that a court of chancery will, in the exercise of its jurisdiction, permit municipal corporations to be subjected to decrees in favor of creditors of those to whom it may be indebted in all cases and under all circumstances. Certainly this should not be done when the effect would be to hamper or restrict them in the performance of public functions, or impede the execution of any contract into which they have entered. The exercise of a proper judicial discretion may be safely left to the courts, to be exercised as occasion requires."

In Dollar v. Allen-West Commssion Co. the county supervisors were the garnishees, and the foundation of the judgment in favor of the complainant, on which the attachment proceeding was based, was a matter with which the supervisors had no concern whatever.

The Compress case was an attachment in chancery, joining as defendants a nonresident corporation as debtor, and the town of Indianola as garnishee indebted to such nonresident. The court sustained the objection of the town and dismissed the garnishment. There, also, the town had no concern, or interest, in the controversy between complainant and the nonresident. The court made this observation: "If a municipality, in its private capacity, should contract debts, so as to be subject to the process of the courts as a private individual, and become thereby liable to garnishment on other principles, it would be for the party claiming such liability to show the nature of the debt, and the amenability of the municipality to suit arising from the nature of the debt sought to be garnished; but that purpose is not sought in this case. That a municipality, unless so subjected by legislative act, is not liable to suit, by garnishment or otherwise, for debts arising from the exercise of its governmental functions, is settled by many authorities." It then quotes this statement from the American & English

Encyclopedia of Law: "This rule is generally placed on the ground that, as a public corporation is created for the public benefit, with political powers, to be exercised for purposes connected with the public good in the administration of civil government, public policy demands that such bodies should not be subjected to the serious interruptions in the prosecution of public business, the inconvenience and delay in the prompt and efficient discharge of the official duties and the accomplishment of important works and measures, which might result from their subjection to such process." It will be noted this rule refers to public corporations "with political powers" exercised in the administration of "civil government."

The Howell v. Kersh case involved many persons, a number of suits and many questions, with none of which did the county have any concern. The garnishment feature undertook to attach in the hands of the county the salary of one having a contract with the county to transport pupils to the public schools. The court held the garnishment would not lie over the objection of the county.

In the Smith Furniture Co. case the complainant undertook to attach funds owing by Mississippi Southern College of Hattiesburg to nonresident debtors of complainant. The court pointed out the college was not liable to suit of any kind.

We think the case at bar is distinguishable from the foregoing cases. The primary function of the Highway Department is to build and maintain roads. While it is a government agency for that purpose, it must be admitted that this work is not the exercise of "political power" or the administration of "civil government." It is not government at all, as that term is understood.

Again, as to the extent of the powers and activities of the Highway Department, it was said in State Highway Commission v. Mason, 192 Miss. 576, 4 So. (2d) 345, 347, 6 So. (2d) 468: "The main object is to lay out, construct, alter, and keep in repair a comprehensive network of

public highways throughout the State. It is a matter of common knowledge and public record that it has taken over, altered, changed, repaired, located, relocated and constructed thousands of miles of such highways and has expended millions of dollars for such purpose. To accomplish this, there must needs be many contacts and negotiations between appellant and private owners of lands. It is also necessary that the Commission should have, and it does have, extensive and far-reaching powers." Practically all of the work of constructing roads is done under contract. The very nature of this work is that of a vast private enterprise. Many questions and controversies, and much litigation, must necessarily arise out of the performance of these functions. While this does not, from a legal standpoint, convert the Department from a public to a private enterprise, it is reason for relaxing, in proper cases, the strict rule applicable to attachments as applied to counties and municipalities and other governmental bodies, and admits of "The exercise of a proper judicial discretion . . . to be exercised as occasion requires." Dollman v. Moore, supra. We should deal with a practical situation in a practical manner as legal rules permit. In recognition of this we have held that the Highway Department is liable for the five per cent damages on appeals, and for costs and interest on breach of contract. State Highway Commission v. Mason, 192 Miss. 576, 4 So. (2d) 345, 6 So. (2d) 468; State Highway Commission v. Wunderlich, 194 Miss. 119, 11 So. (2d) 437, 438. In the latter case it was said: "These functions, together with its other multiple privileges and responsibilities, regardless of whether they divest the Commission of such attributes of sovereignty as are alleged still to inhere in it, operate to invest it with the character of a private corporation to the extent that it is subject to liability for all compensatory damages established as a result of its breach of contract. Its liability for costs in such suits is equally clear."

Section 8038, Code 1942, provides: ''The state highway commission as herein provided shall be vested with the following powers, to wit: . . . (c) To enforce by mandamus, or other legal remedies, all legal rights or rights of action of the state highway commission with other public bodies, corporations, or persons, and the state highway commission shall be a body corporate, and as such may sue and be sued, plead and be impleaded, in any court of justice having jurisdiction of the subject matter of any such suit.'' It is thus seen that the legislature, in recognition of the necessity therefor in the discharge if its vast duties and responsibilities, vested the Department with far-reaching and comprehensive legal powers and duties.

Again, in the case at bar, the foundation of the demand of complainant is pay for construction the very road for which the Department let a contract to the prime contractor, the nonresident debtor in this cause, and which sub-contract was permitted and recognized by the Department. The Department, through its engineers, supervised and directed the work as it progressed. The work is complete and finished. It has been done according to the prime contract. It has been finally inspected, approved and accepted by the Department. There is no dispute about it. It is just a matter of payment by the Department of the balance owing the prime contractor. This garnishment involves no interruption of work or contest over installment payments, or the final payment. The prime contractor itself could sue the Department for the balance owing. Presumably the Department has separated and set aside these funds to the prime contractor, and an attachment in chancery is primarily a proceeding in rem. Clark v. Louisville & N. R. Co., 158 Miss. 287, 130 So. 302. Suppose, instead of money, the Department had in its possession trucks belonging to Trinidad. Could complainant not attach these if such attachment did not interfere with the functions of the Department? We think the peculiar facts

of this case take it from under the rule denying a complainant-creditor the right to attach in chancery money of his nonresident debtor in the hands of a local state agency, or money owing by such agency to the nonresident defendant. We confine our holding to the facts of this case.

Reversed and remanded.

### DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

Section 2729, Code 1942, provides that the chancery court shall have jurisdiction of attachment suits based upon any demands "for the breach of any contract . . . against any non-resident . . . debtor . . . against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such nonresident . . . debtor."

The question we are here called on to decide is whether the State Highway Department, a state agency, is a person within the meaning of this statute. This case is on all-fours with Dollman v. Moore, 70 Miss. 267, 12 So. 23, 19 L. R. A. 222, decided more than fifty years ago; and it is too late now to depart therefrom. Moreover, that case has been several times followed and approved by this Court, and the statute has been several times re-enacted since it was decided. Section 1512, Code 1892, now Section 689, Code 1942, was in force when Dollman v. Moore was decided, and also when thereafter this Court followed and approved that case. Moreover, that case was correctly decided; for the rule, as there stated, is that: "Whether a state or a municipality or other corporation exercising a subdivision of its sovereignty is included by the terms of a statute—not being expressly named—must be determined by a consideration of the subject-matter of the statute, its purpose and effect. Where the statute primarily refers to matters foreign to

the ordinary functions of public corporations, and imposes burdens, duties, or liabilities upon them without any corresponding benefits, the inference must be that it was not the legislative purpose that such corporations should be subject to its provisions.'' Such is the case here; for the matter dealt with in the statute here under consideration is wholly "foreign to the ordinary functions of" the Highway Commission, "and imposes burdens, duties and liabilities upon it without any corresponding benefits.'' That the present legislative intent is in accord with this holding is evidenced by the fact that in 1936 the legislature amended the statute authorizing writs of garnishment on judgments and decrees by including the state and its agencies therein. The enactment of this statute would seem to exclude the state and its agencies from subjection to writs of garnishment not permitted therein; and while no such writ is here sought, a resident defendant in suits under Sec. 2729 is in practically the same situation as is a garnishee in a writ issued on a judgment or decee.

The judgment of the court below should be affirmed.

## ON SUGGESTION OF ERROR.

**L. A. Smith, Sr., J.**, delivered the opinion of the court on suggestion of error.

We have very carefully considered the suggestion of error in this case, together with all the interesting and able briefs thereon, and have with painstaking attention, re-examined our original opinion and have concluded that the suggestion of error must be overruled.

We are strengthened in our conclusion by the decision of the Supreme Court of the United States in Federal Housing Administration v. Burr, 309 U. S. 242, 60 S. Ct. 488, 84 L. Ed. 724. While, by this citation, we are not to be understood as extending or broadening, or contracting, or narrowing, our opinion heretofore announced in this

particular case, we cite, as interesting and comforting, the above decision by the Federal Supreme Court.

The question there presented was whether the Federal Housing Administration is subject to garnishment for monies due to an employee. The Supreme Court of the State of Michigan held that it was. Burr v. Heffner, 289 Mich. 91, 286 N. W. 169. Certiorari was granted because of the importance of the problem, involving the right of garnishment against recently created agencies or corporations of the Federal Government. Federal Housing Administration v. Burr, 308 U. S. 541, 60 S. Ct. 129, 84 L. Ed. 456. Burr had obtained a final judgment against Brooks, and another, and in 1938 the Federal Housing Administration, Region No. 4, was served with a writ of garnishment issued by the Michigan Court. An answer was filed admitting that the Administration owed Brooks $71.11, but contended that it was an agency of the United States Government and therefore not subject to garnishment proceedings. Judgment, however, was entered against the Federal Housing Administration for the amount of its indebtedness to Brooks. As stated, on appeal to the Supreme Court of Michigan the judgment was affirmed, and it was likewise affirmed by the Supreme Court of the United States when it reached there by certiorari.

It was said by Mr. Justice DOUGLAS, speaking for the Court [309 U. S. 242, 60 S. Ct. 490], "Since consent to 'sue and be sued' has been given by Congress, the problem here merely involves a determination of whether or not garnishment comes within the scope of that authorization."

We interrupt here to call attention to Section 8038, Code 1942, which vests the State Highway Commission with the following powers and properties: ". . . (c) To enforce by mandamus, or other proper legal remedies, all legal rights or rights of action of the state highway commission with other public bodies, corporations, or persons, and the state highway commission shall be a

body corporate, and as such may sue and be sued, plead and be impleaded, in any court of justice having jurisdiction of the subject matter of any such suit.''

Continuing now with the Federal case, supra, the Supreme Court of the United States said further: ''. . . when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be. Clearly the words 'sue and be sued' in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings. Garnishment and attachment commonly are part and parcel of the process, provided by statute, for the collection of debts. In Michigan a writ of garnishment is a civil process at law, in the nature of an equitable attachment. . . . But however it may be denominated, whether legal or equitable, and whenever it may be available, whether prior to or after final judgment garnishment is a well-known remedy available to suitors. To say that Congress did not intend to include such civil process in the words 'sue and be sued' would in general deprive suits of some of their efficacy. . . . But petitioner strongly urges considerations of policy against

this conclusion and stresses the heavy burdens which would be imposed on such governmental instrumentalities if garnishment were permitted. It asserts that the task of preparing answers, disclosures and returns to numerous garnishment processes in the courts of each of the states would appreciably impede the federal functions of such an agency. . . . considerations of convenience, cost and efficiency which have been urged here are for Congress which, as we have said, has full authority to make such restrictions on the 'sue and be sued'· clause as seem to it appropriate or necessary.''

The argument in that decision, in our judgment, answers comprehensively within its general scope many of the arguments on the suggestion of error here. The State Highway Commission ''can sue or be sued, plead or be impleaded'' under the statute of Mississippi creating it. But the suggestion of error contends that if we give the meaning to these words which they import, of including therein the remedy by attachment in chancery under the peculiar circumstances of this particular case, dire consequences will follow to the State of Mississippi. We think that there is no such menace in our views, but since such stress has been laid upon this feature of the argument, simply for the purpose of clarification of our former opinion, we make certain observations concerning its significance.

The matter of the jurisdiction of this Court was heretofore settled in this same case, on a motion to dismiss the appeal for lack of jurisdiction, which motion was overruled. Mid-South Paving Company v. State Highway Commissioner, 20 So. (2d) 834.

The case was tried in the court below and in this Court on an agreed statement of facts, stipulated in the record. The correctness of these facts is now sought to be challenged by the suggestion of error, which is largely addressed to the alleged inaccuracy of the facts therein agreed. It is sought to bring into the case other and additional supposed or possible facts, of which we are urged

to take judicial knowledge. However, suffice it to say that when agreed facts form the basis of decision courts must confine decision to those facts according to the agreement. We did that in this case, and acted here on those facts as the facts of the case, and none other. It is not permitted now to impeach such facts by a unilateral denial of their verity.

In our former opinion, to which we adhere, our decision was based on the agreement that construction under the "prime contract was completed and finished and said highway has been accepted and approved by the Highway Department." In our judgment, therefore, we concluded that no attachment in chancery should or could be had unless the contract involved had been complete or practically so.

We did not and do not now hold that the funds of a nonresident debtor in another concurrent contract or other concurrent contracts with the Highway Commission can be reached by the process of garnishment in a particular and separate contract. We are of the opinion that only the funds involved in the single and specific case at litigation could be so reached by the attachment process therein, and where, moreover, the complainant is a sub-contractor or otherwise involved in the prime contract in the instant suit, so as to have become a creditor therein of the nonresident debtor in the chancery attachment.

We did not and do not now hold that the retained percentages, retained under the prime contract, are such "effects" of the nonresident defendant contractor as may be reached by the process of an attachment in chancery, where and while so retained under such contract in good faith. When and after they have been or should have been released, then such process may reach such funds, but not otherwise.

We did not and do not now hold that funds of the prime contractor to become due under the contract, which, prior to the service of the attachment process, in good

faith and for the real purpose of financing the performance of the instant prime contract, had been assigned, as aforesaid, as security for advances therein, constitute such "effects" as may be reached by attachment process, in chancery, until after they have been or should have been released by the lender to the prime contractor.

We believe the department is unduly alarmed by its apprehensions of disaster to follow our construction of the law here. Our duty is to construe the law so as to determine its meaning, and this we have sedulously and earnestly undertaken to do. The suggestion of error must be and is overruled.

So ordered.

**Smith, C. J.**, dissents and adheres to the views expressed in his former dissenting opinion herein.

DISSENTING OPINION.

**McGehee, J.**, delivered a dissenting opinion.

I concur in the view expressed in the controlling opinion on this suggestion of error wherein it is said that the parties should be held to be bound by the agreed statement of facts contained in the record, but on a further consideration of the entire question as to whether the State Highway Commission, as a governmental agency, should be held subject to garnishment under our chancery attachment statute or otherwise, I am persuaded that it would be the better part of wisdom that we adhere to the policy of governmental immunity in such cases. It is doubtful whether there can be a rule applied which recognizes such immunity under particular circumstances and denies it under others, since any attempt to make the proper application of such a rule will tend toward much confusion. Moreover, it will be necessary that the agency claiming immunity in a particular case shall go into court and develop the facts before its liability to

garnishment can be determined, and this interference with the orderly discharge of its governmental functions will defeat the purpose for which the immunity is allowed. If the test applied by the Supreme Court of the United States in the case quoted from in the controlling opinion herein, but not adopted by the majority therein, should ever be adopted in the construction of the statutes of this state creating these governmental agencies with the right to sue and be sued, then there would no longer be any such thing as immunity in favor of our governmental subdivisions against writs of garnishment.